

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-2003

# Cagna v. Weirton Steel Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2547

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Cagna v. Weirton Steel Corp" (2003). *2003 Decisions.* Paper 437.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/437

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-2547

———————

ELLINORA V. CAGNA, in her capacity
as Executrix of the Estate of Leo Cagna,
deceased, and in her own right,
Appellant

v.

WEIRTON STEEL CORPORATION RETIREMENT PLAN-PLAN 001;
RETIREMENT COMMITTEE OF THE WEIRTON STEEL CORPORATION
RETIREMENT PLAN-PLAN 001; WEIRTON RETIREMENT PROGRAM-PLAN
056; RETIREMENT COMMITTEE OF THE WEIRTON STEEL CORPORATION
RETIREMENT PROGRAM-PLAN 056; NATIONAL STEEL CORPORATION
WEIRTON RETIREMENT PROGRAM; RETIREMENT ADMINISTRATIVE BOARD
OF THE NATIONAL STEEL CORPORATION WEIRTON RETIREMENT
PROGRAM

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 00-cv-01222)
District Judge: Honorable Robert J. Cindrich

———————

Argued May 13, 2003

Before: RENDELL, SMITH and ALDISERT, Circuit Judges.

(Filed: June 23, 2003)

Henry Gusky
Thomas M. Ferguson     [ARGUED]
M. Scott Zegeer
Blumling & Gusky, LLP
1200 Koppers Building
Pittsburgh, Pennsylvania  15219

Anthony W. Hinkle
Cipriani & Werner
484 Norristown Road, Suite 126
Blue Bell, PA  19422
        *Counsel for Appellant*

Joseph Mack III
Thorp, Reed & Armstrong, LLP
One Oxford Center
301 Grant Street, 14th Floor
Pittsburgh, Pennsylvania  15219
        *Counsel for Appellees*

Carl H. Hellerstedt, Jr.     [ARGUED]
Babst, Calland, Clements and Zomnir, P.C.
Two Gateway Center, 8th Floor
Pittsburgh, Pennsylvania  15222
        *Counsel for Appellees Weirton Steel*
        *Retirement Plan - Plan 001 and*
        *Retirement Committee of the Weirton*
        *Steel Corporation Retirement Plan -*
        *Plan 001*

_____

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>.

Ellinora Cagna, the surviving spouse of retiree Leo Cagna, appeals from summary

judgment entered in favor of the defendants.  The District Court rejected Mrs. Cagna's

2

claim of breach of fiduciary duty under ERISA based on her allegation that an option form signed by her husband, with her signed certification, failed to clearly state the financial impact of a retirement plan option different from the one he elected. We will affirm.

Inasmuch as we write only for the parties who are familiar with the facts of the case, we recite only those facts necessary for our discussion. On June 25, 1996, Mrs. Cagna and her husband met with defendants' representative, Donna Hanna, in order to discuss and decide which pension options were best suited for Mr. Cagna' needs upon his imminent retirement. The defendants' plan offered four options, entitled, as detailed on the Option Form, as follows: "SURVIVING SPOUSE BENEFIT," "AUTOMATIC 50% SPOUSE (ERISA)," "100% CO-PENSIONER," and "50% CO-PENSIONER."

Ms. Hanna testified that she followed her regular procedure of showing the Option Form to the Cagnas with the printed information as to the potential amounts to be paid under each. She said that she explained, among other matters, that if the AUTOMATIC 50% SPOUSE (ERISA) option was chosen, Leo's pension would be reduced during his lifetime; if Leo died before Appellant, however, Mrs. Cagna would receive the amount of $989.74 shown on the Form under the Automatic 50% Spouse option, and this amount would be added to the $521.53 amount from the Surviving Spouse Benefit. Hanna had been conducting 20-25 retirement sessions a month since June 1995, following the same procedure in each. She completed the meeting by asking the Cagnas if they had any

3

questions about the Form; neither indicated that he or she did. She also told the Cagnas that they could take the Form home with them if they were not ready to make an election. Following her explanation, Hanna testified, "Mr. Cagna turned to Mrs. Cagna and said, 'What do you think?'" Her response was: "Do whatever you want. I have my own pension benefit."

Appellant remembers the retirement session differently. Although admitting that she and her husband read the "EXPLANATION OF POST RETIREMENT OPTION" and that she read and signed, along with Ms. Hanna, the "POST RETIREMENT OPTION ELECTION AND CERTIFICATIONS," Appellant claims that Hanna did not give any explanation of the Option Form and denies alluding to having a pension of her own. Notwithstanding her contention that she did not understand the Form, Appellant admits that neither she nor her husband asked any questions. Appellant also understood that she and her husband were making a choice between line 1, "SURVIVING SPOUSE BENEFIT" and line 2, ""AUTOMATIC 50% SPOUSE (ERISA)" on the Form.

At the end of the session, Mr. Cagna checked the line pertaining to the first option, the "Surviving Spouse Benefit" (which was also referred to as "Life Annuity") and he signed the form. In checking that option and signing the form, Mr. Cagna also explicitly acknowledged his rejection of the "Automatic 50% Spouse's Option." Mrs. Cagna also signed the form, specifically consenting to Mr. Cagna's waiver of the Automatic 50% Spouse Option. There is no allegation that Mrs. Cagna did so without adequate

4

opportunity to inquire about the Automatic 50% Spouse Option. Furthermore, Mr. Cagna was in good health at the time, having fully recovered from a heart attack.

Thereafter, Mr. Cagna died. Mrs. Cagna now contends that, based on the form, she believed that, if Mr. Cagna elected the Automatic 50% Spouse's Option, she would only have received $989.74. She now understands that, had she opted for the Automatic 50% Spouse Option, she would have received $ $989.74 *plus* the surviving spouse benefit of $521.53. She contends that she would have opted for the Automatic 50% Spouse's Option had she understood what her full benefit was.

If the success of Mrs. Cagna's appeal depended exclusively upon whether we were to find the form confusing, she likely would succeed in her appeal. It is difficult to find in it a satisfactory explanation as to the result of choosing the Automatic 50% Spouse's Option. The waiver option and its implications were stressed, while the implications of choosing the Automatic 50% Spouse's Option – which, accepting her contention, Mrs. Cagna would have chosen – were not explained. The form seemingly does not comply with the relevant sections of the ERISA or the accompanying regulations.

However, we have two problems with Mrs. Cagna's contention that, because of this lack of clarity, she is now entitled to opt for the Automatic 50% Spouse's Option instead. First, Mrs. Cagna had the opportunity to inquire about the various options, but she signed the form indicating that she consented to her husband's "election to waive the

5

Automatic 50% Spouse's Option" and acknowledging that she understood that she "will not be entitled to any benefits from the plan (except for any benefits to which [she] may be entitled under the Surviving Spouse's Benefit) in the event that [Mr. Cagna] die[d] before [her]." The form does not necessarily misstate the options, and Mrs. Cagna does not say she received misleading answers to questions about the form. In fact, she does not recall the specific discussions, but now complains that the form does not provide enough information regarding an option not chosen.

Mrs. Cagna is an educated woman. She was eligible for a pension from teaching totaling approximately $2,300, and, with her husband, received approximately $1,500 per month in rental income from properties that the two owned. Given her certification and her failure to adduce any active misrepresentation or concealment by the company, we find her claim of detrimental reliance to be unsupported. Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001) (requiring detrimental reliance for a breach of fiduciary claim under ERISA).

Second, the desire of Mrs. Cagna that we give effect to her "choice," after the fact, of the unexplained option is too speculative. For one thing, the choice was admittedly that of her husband. Under the retirement plan and ERISA, her only role was to evidence her understanding of and agreement in the waiver. Her statement that she would not

have signed the waiver if she had fully understood misses the mark.[1]  The real question is:  What would her husband have chosen?  How do we know which of the four options he would have chosen?  For all we know, they may have discussed all options more fully and still have chosen the waiver in light of his excellent health at the time.  We will not enter an order based on speculation.

* * * * *

The judgment of the District Court will be affirmed.

_____

TO THE CLERK OF COURT:

Please file the foregoing not precedential opinion.


/s/Marjorie O. Rendell
Circuit Judge

---

[1] While Mrs. Cagna testified that Mr. Cagna said he would agree to whatever she wanted, this would not be admissible to disprove the fact that the choice of pension options was his (or would have been a product of their combined thinking or agreement). It is hearsay and therefore does not create a genuine issue at the summary judgment stage. See W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995) ("Summary judgment is appropriate when there are no issues of material fact presented in *admissible form* and the moving party is entitled to judgment as a matter of law." (emphasis added)).

7